Megan **GARRETT**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0010–CR–659.**

Court of Appeals of Indiana.

Sept. 28, 2001.

Michael Gene Worden, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Following a jury trial, Appellant, Megan Garrett, was convicted of Reckless Homicide,[1] a Class C felony. Upon appeal, Garrett presents three issues for review, which we restate as:

(1) whether the trial court erred when it instructed the jury regarding lesser included offenses;

(2) whether the evidence was sufficient to support the conviction;

(3) whether the trial court improperly imposed the maximum sentence.

We affirm.

The facts most favorable to the jury's verdict reveal that on August 3, 1999, an ambulance from the Brownsburg Fire Department responded to a report of an unresponsive child at the home of Megan Garrett, located in Marion County. An emergency medical technician arrived to find Garrett on a swimming pool deck with her two-year-old son, J.G. J.G. was wet and unresponsive, and Garrett indicated that her son had fallen into the pool. Fire department personnel attempted to revive J.G. and continued their efforts en route to the hospital. Despite these attempts, J.G. remained unresponsive, and after further efforts to revive the child at the hospital, J.G. was pronounced dead.

As J.G. was being rushed to the ambulance, Marion County Deputy Sheriff Rob Challis arrived at Garrett's home. Deputy Challis called for a detective, and Doug Scheffel, a detective with the Marion County Sheriff's Department, arrived at the scene. When Detective Scheffel asked Garrett what had occurred, she told him that she had laid J.G. down for a nap at approximately 1:00 p.m. and began to do the laundry. Garrett further told Detective Scheffel that she later went into the bedroom where she had laid J.G., discovered that he was no longer there, and began to look for him. Garrett said that she eventually found J.G. in the swimming pool.

The next day, the police asked Garrett to come to the police station to be inter-

---

1. Ind.Code § 35-42-1-5 (Burns Code Ed. Repl. 1998).

viewed concerning J.G.'s death. Detective Scheffel and Lieutenant Christopher Heffner, also of the Marion County Sheriff's Department, interviewed Garrett. At first, Garrett maintained that J.G. had drowned in the swimming pool. Detective Scheffel then confronted Garrett with the results of the medical examiner's report, which indicated that J.G. died from manual strangulation. Although she continued for a few minutes to insist that J.G. drowned, Garrett eventually told the detectives that she had gotten him in a choke-hold and squeezed him until he went limp. After signing a waiver of her Miranda rights, Garrett repeated her statement to the police on videotape.

The State charged Garrett with murder.[2] Near the end of the trial, the State tendered instructions on voluntary manslaughter and reckless homicide. The trial court gave these instructions to the jury over Garrett's objection. The jury found Garrett guilty of reckless homicide, and the trial court sentenced Garrett to a total of eight years incarceration.

## I

### Jury Instructions Regarding Lesser Included Offenses

Garrett claims that the trial court erred when, over her objection, it instructed the jury regarding voluntary manslaughter and reckless homicide. In her Statement of the Issues, Garrett states it as "Whether a trial court can properly give lesser included offense instructions over objection by the defense." Appellant's Brief at 1.

Garrett's objection to the reckless homicide instruction, however, was merely that she was not requesting the jury to consider any lesser included offenses. This implies that she was risking an "all or noth-

ing" jury verdict, i.e. murder or acquittal. Her brief, however, asserts that the error in giving the instruction was because her defense was that the child's death was an accidental drowning and that there was no evidentiary dispute with regard to the various elements distinguishing murder from other lesser included offenses. Although one might discern from this that her right to an "all or nothing" verdict necessarily follows, she does not argue nor cite authority which would undermine the State's ability to give the jury alternatives to an "all or nothing" verdict, even over defendant's objection.

In any event, albeit without discussion as to which party is seeking the instruction, instructions upon lesser included offenses given over defendant's objection have been approved by our Supreme Court and by this court. See e.g., Wilkins v. State, 716 N.E.2d 955 (Ind.1999); Porter v. State, 671 N.E.2d 152 (Ind.Ct.App.1996), trans. denied.

Those two cases did not discuss the issue in terms of whether the instruction was sought and refused by the defendant as opposed to given over the objection of the defendant. Both cases rely upon Wright v. State, 658 N.E.2d 563 (Ind.1995) as the test for when a lesser included offense instruction is appropriate, if not required. In Wright, the defendant was charged with murder. In response to a jury inquiry during their deliberations, as to whether they might convict of reckless homicide, the jury was advised with regard to the offense of reckless homicide, as well as other offenses, i.e., voluntary manslaughter, involuntary manslaughter, and battery. Defendant did not object to this advisement. See Wright v. State, 643 N.E.2d 417, 420 (Ind.Ct.App.1994) (Gar-

---

**2.** "A person who ... knowingly or intentionally kills another human being ... commits

murder, a felony." Ind.Code § 35–42–1–1 (Burns Code Ed. Repl. 1998).

rard, J., dissenting). He was convicted of reckless homicide.

Be that as it may, by focusing upon the circumstances under which lesser included offense instructions may be or should be given, *Wright* strongly implies that the judicial determination as to whether to give such instructions does not depend upon which party tenders them and whether or not the other party poses an objection.

■ Instructing the jury is left to the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Clark v. State*, 732 N.E.2d 1225, 1230 (Ind.Ct.App.2000). To determine whether a trial court should instruct a jury regarding a lesser included offense, we follow the test enunciated by our Supreme Court in *Wright*, 658 N.E.2d at 566–67. Under the *Wright* test, we first determine whether the lesser offense is either inherently or factually included in the offense charged. *Id.* Garrett concedes that both voluntary manslaughter and reckless homicide are inherently lesser included offenses of murder. *See Washington v. State*, 685 N.E.2d 724, 727 (Ind.Ct.App.1997) (holding that voluntary manslaughter is an inherently included offense of murder); *Brown v. State*, 659 N.E.2d 652, 656 (Ind.Ct.App.1995) (holding that reckless homicide is an inherently included offense of murder), *trans. denied.*

Because the lesser offenses of voluntary manslaughter and reckless homicide are included in the charged offense of murder, we must determine whether a serious evidentiary dispute exists as to which offense the defendant committed. *See Wright*, 658 N.E.2d at 567. As noted, Garrett contends that there was no serious evidentiary dispute as to which offense she committed, and therefore, the trial court should not have given any lesser included offense instructions.

■ Where the trial court has made a finding regarding the existence of a serious evidentiary dispute, we review only for an abuse of discretion. *Charlton v. State*, 702 N.E.2d 1045, 1048 (Ind.1998). In the present case, however, the trial court did not make any ruling upon the existence of a serious evidentiary dispute as to which offense Garrett committed. Therefore, we must determine this issue de novo, based upon our own review of the record. *Id.*

■ The trial court instructed the jury regarding voluntary manslaughter. Garrett claims that the evidence presented at trial did not indicate that she acted under "sudden heat," which is required to mitigate what would otherwise be murder to voluntary manslaughter. *See* Ind.Code § 35–42–1–3 (Burns Code Ed. Repl. 1998); *Wilson v. State*, 697 N.E.2d 466, 474 (Ind. 1998). Garrett, however, was not convicted of voluntary manslaughter. Therefore, even if the trial court had erred in giving a voluntary manslaughter instruction, such error would be harmless.[3] *See Porter*, 671 N.E.2d at 155.

Garrett also claims that the evidence presented at trial did not support the giving of a reckless homicide instruction. A person commits reckless homicide when he or she recklessly kills another human being. Ind.Code § 35–42–1–5 (Burns Code Ed. Repl. 1998). "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial

---

**3.** Furthermore, although the *Wright* court held that it was reversible error to *refuse* an instruction on a lesser included offense if there is a serious evidentiary dispute, it is still unclear whether *giving* an instruction in the absence of a serious evidentiary dispute is *per se* reversible error. *See Wilkins*, 716 N.E.2d at 957.

deviation from acceptable standards of conduct." Ind.Code § 35–41–2–2(c) (Burns Code Ed. Repl. 1998). Garrett claims that the evidence at trial indicated that her son's death was either an accidental drowning or, at most, the result of her negligent actions. We disagree.

■ The State presented evidence that Garrett was upset with her son because he had been "bugging" her while she was trying to do the laundry. Record at 401. Garrett stated that, as she was playing with her son, she was "frustrated" and put her arm around his neck and "squeezed him hard." Record at 401. Eventually, after squeezing her son's neck for "too long," J.G. became limp and stopped breathing. Record at 401. Dr. John Pless, who performed the autopsy upon J.G., testified that the cause of J.G.'s death was strangulation. Dr. Pless also testified that the pressure applied to J.G.'s neck was sufficient to "push the larynx very hard against the back of the spine." Record at 304. This evidence, if believed, would allow the trier of fact to conclude that Garrett acted in plain, conscious, and unjustifiable disregard of the harm that might result, and that such disregard involved a substantial deviation from acceptable standards of conduct. Therefore, there was a serious evidentiary dispute as to whether Garrett knowingly or intentionally killed her son, as alleged in the charging information, or whether she did so recklessly. As a result, the trial court did not err when it instructed the jury regarding reckless homicide.

Garrett also claims that, "[w]here a defense is offered which, if credited by the jury, would absolve the defendant of any criminal liability (such as insanity, alibi, or accident), then there is no serious evidentiary dispute upon which to base the giving of any lesser included offense instructions." Appellant's Brief at 12. Thus,

Garrett contends that her choice to present a defense of accidental drowning forbade the trial court from instructing the jury regarding any lesser included offenses. In support of her position, Garrett cites *Young v. State*, 699 N.E.2d 252, 256 (Ind.1998), *Wilson*, 697 N.E.2d at 474, *Charlton*, 702 N.E.2d at 1049, and *McEwen v. State*, 695 N.E.2d 79, 85–86 (Ind. 1998). After reviewing these cases, we do not agree that they support Garrett's position.

In *Young*, the defendant, charged with murder, presented an alibi defense at trial. The trial court in *Young* refused the defendant's request for an instruction on reckless homicide on the grounds that he had raised an alibi defense. Upon appeal, our Supreme Court held that, despite the alibi defense, it was reversible error for the trial court to have refused the lesser included offense instruction. 699 N.E.2d at 257. The court stated that, although an alibi defense may be pertinent to the issue of the existence of a serious evidentiary dispute concerning the element or elements differentiating the greater offense from the lesser, it does not automatically bar instructions upon lesser included offenses. *Id.* at 256. Thus, the *Young* court came to a conclusion that a defendant is not precluded from a lesser included offense instruction by interposing a defense inconsistent with the commission of the crime covered by the instruction.

*Wilson* does not support Garrett's proposition that the trial court was barred from giving lesser included offense instructions if requested by the State. In *Wilson*, the defendant, who was convicted of murder, claimed that the trial court erroneously refused his tendered instruction on reckless homicide. Our Supreme Court held that the defendant's interposition of an insanity defense did not *by itself* raise a serious evidentiary dispute concerning the

difference between the mens rea required for murder and that required for reckless homicide and that the trial court properly refused the tendered instruction. *Id.* at 475. In doing so, however, the *Wilson* court strongly implied that, because the defendant raised an insanity defense, incompatible with any offense, the trial court was prohibited from giving any lesser included offense instructions. Once again, however, this analysis was made in the context of an instruction requested by the defendant, not by the State.

The defendant in *Charlton* claimed at trial that the shooting of his former girlfriend was an accident. Upon appeal, the defendant maintained that the trial court erred when it rejected his tendered instruction on reckless homicide. The *Charlton* court did not say that it is per se error to instruct a jury regarding reckless homicide when a defense of accident is presented. Instead, using the test set forth in *Wright*, it determined that although the evidence would permit a conclusion that the shooting was accidental, or perhaps negligent, the defendant had not presented or referred to any evidence showing that his conduct was reckless. Therefore it was held that refusal of the reckless homicide instruction was appropriate.

In the case before us, Garrett claims that at most, the choking of the child was merely negligent if not wholly accidental. In this regard, the claim is virtually identical to that presented in *Charlton*. In *Charlton* there was evidence from which the jury could find that his gun discharged during a struggle with the victim. Although that evidence suggested that the victim had grabbed the gun and defendant was merely trying to get it away from her, the totality of the circumstances might also permit a reasonable trier of fact to conclude that Charlton acted either recklessly

or negligently. In the *Charlton* scenario, had it been the State which requested a reckless homicide instruction over defendant's objection, it is not at all clear that refusal to give the instruction would have been appropriate.

Similarly, in *McEwen,* the court noted that if the defendant's account of the incident was credited, the killing he was charged with was accidental and if the State's account of what occurred was credited, the killing was knowing or intentional. The *McEwen* court then used the *Wright* test to determine that the trial court did not err in concluding that there was no serious evidentiary dispute regarding whether the defendant acted recklessly. 695 N.E.2d at 86.

■ Again, it is not clear that had the State, rather than McEwen, requested the instruction, such would have been erroneously given. Nowhere in *McEwen,* nor in any of the other cases cited by Garrett, can we find support for her proposition that, simply by raising a defense of accident, a defendant may preclude the giving of any lesser included offense instructions. Instead, these cases demonstrate that, even where a defendant offers a defense which would absolve her of any liability, courts must use the test set forth in *Wright* to determine whether it is appropriate to instruct the jury regarding lesser included offenses. As noted by the court in *Young,* such a defense may well be relevant to the issue of whether or not a serious evidentiary dispute exists. A defendant cannot, however, preclude the trial court from giving any lesser included offense instructions simply by raising a defense which, if credited by the jury, would clear her of any liability.

Here, although Garrett claimed that the death of her son was an accident, the evidence at trial raised a serious evidentiary dispute as to whether Garrett commit-

ted murder or reckless homicide. Therefore, we find no reversible error in the manner in which the trial court instructed the jury regarding lesser included offenses.[4]

## II

### *Sufficiency of the Evidence*

 Garrett claims that the evidence presented at trial was insufficient to support her conviction for reckless homicide. Upon review of claims of insufficient evidence, this court will neither reweigh evidence nor judge the credibility of witnesses. *Allen v. State,* 743 N.E.2d 1222, 1229 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* We consider only the evidence favorable to the verdict and reasonable inferences to be drawn therefrom. *Id.* Where there is substantial evidence of probative value from which the trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id.*

Here, Garrett was convicted of reckless homicide, which is defined by statute as the reckless killing of another human being. I.C. § 35–42–1–5. As noted above, the statute defining recklessness reads, "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35–41–2–2(c).

Garrett points to evidence presented at trial which supports her claim that J.G. accidentally drowned in the swimming pool. Garrett also claims that her videotaped statement to the police, wherein she admitted to killing her son, is unreliable

due to her susceptibility to suggestion and manipulation by the police. Yet Garrett did not challenge the admissibility of this statement at trial, nor does she do so upon appeal. Instead, her argument is simply an invitation for us to reweigh the evidentiary value of the tape, which we will not do. Likewise, Garrett's attacks upon the medical opinion of Dr. John Pless, who determined that the cause of J.G.'s death was strangulation, are merely requests for us to reweigh evidence and judge witness credibility.

 Dr. Pless, who performed the autopsy on J.G., testified that J.G. suffered internal hemorrhages in the neck muscles in the front of the neck and the muscles surrounding the larynx. Dr. Pless also testified that there were injuries "in several different layers from immediately beneath the skin right on through the tissues that come up right next to the spine." Record at 295. Dr. Pless further stated that such hemorrhages in multiple layers of the neck are not seen unless there has been a trauma to the neck. According to Dr. Pless's testimony, the injuries found in J.G.'s neck were inconsistent with injuries caused by seizure, which can occur in drowning victims.

Moreover, Dr. Pless testified that he found small pinpoint hemorrhages in the skin, known as petechiae, on J.G.'s face. Dr. Pless testified that petechiae are not among the indicia of drowning but are considered an indication of strangulation. Furthermore, Dr. Pless testified that he found no water in J.G.'s stomach, which is very often found in children who have

---

4. We recognize that the giving of lesser included instructions may well depend upon who is requesting them. The state of the case law as we view it seems to frequently preclude a defendant from obtaining a lesser included offense instruction when under the same or similar facts the State would be entitled to such an instruction. This anomaly might well provide an appropriate subject for more detailed consideration and resolution by our Supreme Court.

drowned. Dr. Pless stated that the medical procedures performed on J.G. during the attempts to revive him would not have displaced any water in the stomach, and that such procedures could not cause the type of injuries seen in J.G.'s neck. Dr. Pless testified that, after examining J.G.'s body, he excluded all other causes of death except·strangulation. In Dr. Pless's medical opinion, the cause of J.G.'s death was "asphyxia due to manual strangulation,"[5] and he was "very confident" in that opinion. Record at 296, 307.

In addition to the testimony of Dr. Pless, Lieutenant Heffner testified that he and Detective Scheffel interviewed Garrett on the day after J.G.'s death. According to Lieutenant Heffner's testimony, Garrett initially claimed that her son had accidentally drowned while she was doing the laundry. The police then confronted Garrett with the conclusion of Dr. Pless's report—that J.G.'s death was not the result of a drowning. After five or ten minutes of maintaining that she had found J.G. in the pool, Garrett began to weep. According to Heffner, Garrett then said that J.G. had been annoying her and that while she was "halfway playing" with him, she put her left arm around his neck and squeezed him. Record at 388. Garrett then told the police that as she squeezed J.G., she felt his body go limp. Heffner testified that Garrett then stated that she laid J.G. down and noticed that he was not breathing, so she placed him in the swimming pool.

After Garrett made these statements, the police began to videotape the interview, and the State introduced this videotape into evidence. On the tape, Garrett repeated her account of what happened.

She stated that J.G. was "bugging" her, and that she was frustrated. Garrett said that she was playing with J.G., grabbed him around the neck and, because she was still angry, squeezed her son's neck. Garrett then stated that after J.G. went limp, she took him to the swimming pool in an attempt to revive him. However, when questioned further as to why she put J.G. in the pool, Garrett admitted she wanted to make it appear as if J.G. had drowned. Garrett also stated that she placed inner tubes and rafts over J.G. to make it seem as if he had fallen into the pool and drowned.

From this evidence, the jury could have reasonably concluded that Garrett engaged in conduct in plain, conscious, and unjustifiable disregard of harm that might result, and that this disregard involved a substantial deviation from acceptable standards of conduct. Therefore, the evidence was sufficient to support Garrett's conviction for reckless homicide. *See McClaskey v. State*, 540 N.E.2d 41 (Ind.1989) (sufficient evidence to support conviction of reckless homicide where there was evidence that a factor in child's death was having been severely shaken, defendant was alone with victim and another child, defendant admitted that she became extremely angry with the child when the child refused to stop crying, and that she "may have picked the baby up too hard."); *Woodrum v. State*, 498 N.E.2d 1318 (Ind. Ct.App.1986) (sufficient evidence to support conviction for reckless homicide where witnesses testified that victim was in good health when placed in defendant's care and there was evidence that defendant had the sole opportunity to inflict the

---

**5.** Although the term "manual strangulation" suggests strangulation involving the hands, Dr. Pless testified that the injuries to J.G.'s neck were the result of broad-base forces applied to the neck by a smooth object. When the prosecutor asked, "What kind of thing would be broad base and smooth," Dr. Pless replied, "an arm extended over the neck with some force." Record at 296.

injuries, which included blunt trauma to the abdomen).

## III

### Sentencing

Garrett's final claim is that the trial court improperly sentenced her to eight years imprisonment, the maximum sentence for a Class C felony.[6] Garrett claims that the trial court considered improper aggravating factors and that her sentence is manifestly unreasonable. Sentencing decisions are within the sound discretion of the trial court. *Allen*, 743 N.E.2d at 1236. When a trial court imposes a sentence other than the presumptive sentence, we will examine the record to ensure that the trial court explained its reasoning for selecting the imposed sentence. *Id.* at 1237. When a trial court deviates from the statutorily prescribed presumptive sentence, it must identify all of the significant mitigating and aggravating circumstances, state the reason why it considers each circumstance to be either mitigating or aggravating, and articulate the evaluation and balancing of these circumstances to determine whether an enhanced or reduced sentence is appropriate. *Id.*

Here, the trial court found four aggravating factors: (1) the cause of death was manual strangulation; (2) Garrett did not show remorse; (3) the victim was in a substantial position of trust vis-à-vis Garrett; and (4) Garret would be a danger to any children that might be in her care. As mitigating factors, the trial court found: (1) Garrett had no prior criminal history; (2) Garrett had substantial family support; (3) putting Garrett in prison would be a hardship to her family; (4) Garrett was young when she committed the crime; and (5) Garrett might respond well to short-term imprisonment. Garrett concedes that the trial court could consider as an aggravating factor the fact that she was in a substantial position of trust with J.G. However, Garrett claims the other three aggravating factors considered by the trial court were improper.

Garrett claims that it was improper for the trial court to consider as an aggravating factor that J.G. died by manual strangulation. According to Garrett, this factor is a material element of the crime, which cannot be considered as an aggravating circumstance. *See Ellis v. State*, 707 N.E.2d 797, 804 (Ind.1999). However, a trial court may consider the nature and circumstances of a crime when determining what sentence to impose. *See* Ind.Code § 35–38–1–7.1(a)(2) (Burns Code Ed. Supp.2000); *Georgopulos v. State*, 735 N.E.2d 1138, 1144 (Ind.2000). Also, the manner in which a crime is committed may properly be considered as an aggravating circumstance. *Id.* When enhancing a sentence in this manner, the trial court should detail why the defendant deserves an enhanced sentence under the particular circumstances. *Bonds v. State*, 729 N.E.2d 1002, 1005 (Ind.2000), *reh'g denied.*

Here, the trial court stated, "[J.G.] did not deserve this. Two ... years old, helpless as a child can be.... [J.G.] was fragile and in your care. And you took his life." Record at 830. The trial court also noted that J.G. "was strangled. Cause of death, manual strangulation by your reckless act." Record at 831. The trial court further explained, "You chocked [sic] [J.G.] and threw him in the pool." Record at 832. Although not a terribly detailed explanation of why the trial court considered this factor to justify an enhanced sentence, the trial court's statements are more than a bare recitation

---

**6.** *See* Ind.Code § 35–50–2–6(a) (Burns Code Ed. Repl. 1998).

534

of the elements of the offense. *See Widener v. State*, 659 N.E.2d 529, 532 (Ind. 1995). Therefore, we hold that the trial court adequately explained why it considered the circumstances and manner in which the crime was committed to be an aggravating factor.

■ Garrett also claims that the trial court erred when it found that she would be a danger to any children in her care. The trial court stated:

"I am concerned about [Garrett's other child]. I'm concerned about any child in your care and custody. If you get mad who knows what will happen.

\* \* \*

I believe you are a danger to any children that would be in your care, and custody and control at this point in time. You quite simply don't know how to deal with young children." Record at 830–32.

Garrett claims that, in prison, she will not have custody of any children and, therefore, the trial court did not adequately explain why it was proper to enhance her sentence based upon these concerns. However, as noted by the State, the trial court's comments indicate that it was concerned that Garrett might commit a similar crime in the future. In determining what sentence to impose, a trial court is required to consider the risk that the defendant will commit another crime. I.C. § 35–38–1–7.1(a)(1). Thus, we cannot say that the trial court improperly considered as an aggravating factor the risk that Garrett might commit a similar crime.

■ Garrett also claims that it was improper for the trial court to consider her lack of remorse as an aggravating factor. In support of her position, Garrett cites *Bluck v. State*, 716 N.E.2d 507, 512 (Ind. Ct.App.1999), in which the court stated, "It is not an aggravating factor for a defendant, in good faith, to consistently maintain his innocence, and a court may not enhance a sentence for that reason." This statement, however, addresses the failure to admit guilt, not the failure to show remorse. As the court in *Bluck* explained, "A defendant lacks remorse when he displays disdain or recalcitrance, the equivalent of 'I don't care.' . . . This has been distinguished from the right to maintain one's innocence, i.e., 'I didn't do it.'" *Id.* at 512 (citations omitted). A particular defendant may vigorously assert his innocence while at the same time displaying an "I don't care" demeanor. *See Georgopulos*, 735 N.E.2d at 1145.

■ During the sentencing hearing, Garrett indicated to her husband and her family that she was sorry. Garrett also stated, "I wish [J.G.] could have lived. I would want him to live." Record at 816. The trial court, however, stated:

"I don't know exactly what you're sorry for when you answer [defense counsel's] questions. You said to your husband, 'I'm sorry,' you said to everybody out here that you're sorry. What happened in response to [the prosecutor's] question[:] 'Jesse died in the pool.' The fact is, I don't see much remorse coming from you. I think you're sorry for yourself being in this position." Record at 830–31.

From this statement, it is appears that the trial court may have considered Garrett's insistence of her innocence as a lack of remorse; this would be improper. Nevertheless, even if the trial court did err in concluding that Garrett lacked remorse, such is to be regarded only as a modest aggravator. *See Georgopulos*, 735 N.E.2d at 1145. Moreover, a single aggravating factor is sufficient to sustain an enhanced sentence. *Smith v. State*, 718 N.E.2d 794, 801 (Ind.Ct.App.1999), *trans. denied.* Because we have concluded that the other

aggravating factors considered by the trial court were valid, any error by the trial court in considering Garrett's lack of remorse would be harmless. The trial court did not erroneously sentence Garrett based upon improper aggravating factors.

■■■■ In a similar vein, Garrett claims that her sentence is manifestly unreasonable. If the sentence imposed by the trial court is manifestly unreasonable in light of the nature of the offense and the character of the offender, this court may revise the sentence. *Allen,* 743 N.E.2d at 1236–37; former Ind.Appellate Rule 17(B). However, the issue is not whether the sentence is unreasonable in our judgment, but whether it is clearly, plainly, and obviously so. *Evans v. State,* 725 N.E.2d 850, 851 (Ind.2000). If no reasonable person could consider the imposed sentence appropriate, then the sentence is manifestly unreasonable. *Nantz v. State,* 740 N.E.2d 1276, 1284 (Ind.Ct.App.2001), *trans. denied.*

■■■ Much of Garrett's argument on this issue is simply an invitation for us to reweigh the aggravating and mitigating factors found by the trial court; however, as noted above, sentencing determinations are within the discretion of the trial court. *Allen,* 743 N.E.2d at 1236. Moreover, we will not ordinarily substitute our opinion for that of the trial court. *Nantz,* 740 N.E.2d at 1284.

■■■ Garrett claims that her crime does not warrant the maximum sentence because such sentences are generally most appropriate for the worst offenses and offenders. *See Evans,* 725 N.E.2d at 851; *Buchanan v. State,* 699 N.E.2d 655, 657 (Ind.1998). Garrett claims that she is not among the worst offenders. However, we believe the trial court was within its discretion when it sentenced Garrett to the maximum allowable sentence. As discussed in full above, the evidence demonstrated that Garrett strangled her two-year-old son by squeezing his neck with such force that his larynx was pushed against his spine. When J.G. became unresponsive, Garrett tried to cover up her crime by placing her son into a swimming pool. Despite the mitigating factors found by the trial court, we cannot say that Garrett's sentence of eight years imprisonment is clearly, plainly, and obviously unreasonable.

Lastly, Garrett claims the trial court believed her to be guilty of murder and enhanced her sentence because it felt that the jury's verdict was incorrect. *See Hamman v. State,* 504 N.E.2d 276 (Ind. 1987) (sentence reversed and remanded where trial court enhanced sentenced based upon its disagreement with jury's verdict). Here, the trial court did tell Garrett, "You are lucky the jury only found you guilty of reckless homicide." Record at 832. However, this does not necessarily indicate that the trial court thought Garrett to be guilty of murder. Indeed, the trial court also stated, "And I also suspect that ... the jury probably felt the State hadn't proved beyond a reasonable doubt that you knowingly or intentionally killed [J.G.] but that you did it in a reckless manner." Record at 830. Thus, it appears that the trial court accepted the jury's verdict. Moreover, we presume that trial courts know and follow the law, and Garrett has not overcome this presumption. *See Moran v. State,* 622 N.E.2d 157, 159 (Ind.1993). We are not persuaded by Garrett's claim that the trial court believed the jury to have reached the incorrect verdict. *See Ellis v. State,* 567 N.E.2d 1142, 1144 (Ind.1991).

### Conclusion

In conclusion, the trial court did not erroneously instruct the jury with regard to lesser included offenses. The evidence

was sufficient to support Garrett's conviction for reckless homicide, and the trial court did not abuse its discretion in sentencing Garrett to the maximum allowable sentence.

The judgment is affirmed.

FRIEDLANDER, J., and RILEY, J., concur.