

**FILED**

May 30 2018, 5:57 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

William D. Polansky
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Racxon Cruze McDowell,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 30, 2018

Court of Appeals Case No.
82A01-1710-PC-2469

Appeal from the Vanderburgh
Superior Court

The Honorable Robert J. Pigman,
Judge

Trial Court Cause No. No.
82D03-1412-PC-6080

**Mathias, Judge.**

[1]     Racxon Cruze McDowell ("McDowell") was convicted of murder in 2012. Following his unsuccessful direct appeal, McDowell filed a petition for post-conviction relief, which the Vanderburgh Superior Court denied. McDowell

appeals and presents three issues, which we consolidate and restate as whether McDowell was denied the effective assistance of trial counsel.

[2] We affirm.

## Facts and Procedural History

[3] The facts surrounding McDowell's convictions are as follows.[1] On the morning of June 3, 2012, McDowell called 911 to report that his girlfriend, Rachel Lomax ("Rachel") was unresponsive. McDowell told the responding paramedic, Dylan Woods ("Woods"), that he and Rachel had been out drinking the night before and that when they came home from the bar, she took six sleeping pills and went to bed. He claimed that when he woke up, he found Rachel sitting naked on the toilet and not breathing. Woods initially suspected, based on McDowell's story, that Rachel might have overdosed. While attending to Rachel, however, he noticed numerous injuries on her body. When confronted with these injuries, McDowell claimed that Rachel had gotten into a fight at the bar the night before. Woods and a responding firefighter attempted to perform CPR on Rachel. But the efforts to resuscitate Rachel were unsuccessful, and she was pronounced dead at the scene.

[4] Woods summoned the Evansville Police Department ("EPD") to the scene, who subsequently sought a search warrant. Both the police and Woods noted

---

[1] A detailed statement of facts was unnecessary to address McDowell's arguments on direct appeal. *See McDowell v. State,* 82A01-1311-CR-492, 2014 WL 3408336, slip op. at 2–3 (Ind. Ct. App. July 11, 2014). We therefore set forth a more detailed recitation of the facts here.

that McDowell had scratches on his face. After obtaining the search warrant, the police examined the scene and noted a shoe print on Rachel's shirt that was consistent with McDowell's shoe. Some of Rachel's clothing had also been ripped or damaged. Rachel's blood was on the door of the bathroom and her right hand. Testing of Rachel's fingernails revealed the presence of McDowell's skin under her fingernails.

[5] McDowell was taken to jail by EPD Officer Raymond Holden ("Holden"). McDowell asked Holden if he remembered him from a prior traffic stop. When Holden stated that he did not remember him, McDowell responded, "Well, you remember Rachel, don't you?" Trial Tr. p. 607. When Holden asked who Rachel was, McDowell stated, "You know Rachel, the girl I f**kin' killed?" *Id*. When being booked into jail, McDowell told the booking officer, "I loved the bitch. I killed her. I loved the bitch. I killed her." *Id*. at 617.

[6] McDowell was subsequently interviewed by police and denied any involvement in Rachel's death. Instead, he claimed that she had been assaulted by a man and woman at the riverfront. The police confronted McDowell about inaccuracies in his story, and McDowell admitted his story was untrue. McDowell later wrote a letter to Rachel's parents, admitting that he attacked her after she had punched and kicked him.

[7] An autopsy revealed the extent of Rachel's injuries, which were horrifying. She suffered black eyes and a bruise on her chin. She also had a large contusion on the right side of her face that was the result of a "serious injury" that itself

would have caused unconsciousness and even death from internal bleeding. Trial Tr. pp. 189–90. The injury causing the contusion was so severe that it also caused multiple, potentially-fatal skull fractures and a subdural hematoma. The subdural hematoma caused Rachel's brain to swell and was also a potentially fatal injury. *Id.* at 199, 217. These injuries were caused by blunt force trauma. Rachel also sustained bruises to her forehead, left temple, behind the left ear, and on her chin and neck. The autopsy also revealed an injury to the right temporalis muscle,[2] which was so severe that it tore the muscle loose from the skull. Rachel also had several bruises on the top of her scalp and multiple bruises on her extremities.

[8]     Rachel also sustained bruises to her small and large intestines and a hematoma to one of her kidneys. In addition, Rachel's breastbone was fractured as a result of a severe blow to the chest. Another blow caused multiple fractured ribs on her left side. These ribs were "displaced" fractures, where the bone was so damaged that it came apart. Trial Tr. p. 203. Such fractures require a significant amount of force. The chest injuries also caused damage to her lungs, which would have caused bleeding in the left lung. There was also a large laceration to Rachel's liver, such that the organ was almost severed in two. This injury caused massive, fatal bleeding and was identified as the main cause of death.

---

[2] The temporalis, or temporal muscle, is used to close the jaw. *See PubMed Health*, Temporalis Muscle, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0025338/.

[9]     On June 6, 2012, the State charged McDowell with murder, Class D felony obstruction of justice, and Class A misdemeanor false informing. A three-day jury trial commenced on August 26, 2013. At trial, the State dismissed the lesser two counts and proceeded only on the murder charge. During defense counsel's opening statement, he admitted that McDowell and Rachel had gotten into a physical fight but argued that the jury should find McDowell guilty of involuntary manslaughter.

[10]    McDowell testified on his own behalf and claimed that he and Rachel had gotten into a fight about missing pills. According to him, Rachel pushed him and knocked him down, and he pushed her and knocked her down. He then locked himself in the bathroom, but Rachel began to pound on the door. When he opened the door, he punched Rachel in the chin; when she retaliated by spitting in his face, he slammed her to the ground and pressed his knee into her stomach to restrain her, which he believed in hindsight to be what caused the fatal injury to her liver. He maintained that he did not intend to kill Rachel.

[11]    McDowell's trial counsel requested that the jury be instructed on involuntary manslaughter, but the trial court rejected the instruction. The trial court did, however, instruct the jury regarding voluntary manslaughter. In closing arguments to the jury, McDowell's trial counsel argued that there was insufficient evidence to show that McDowell intended to kill Rachel. Focusing on the medical examiner's conclusion that the cause of death was the laceration to the liver and loss of blood, McDowell's counsel argued:

To convict [McDowell] of murder, you have to say that [he] knew that by pressing down on her liver with his body weight with his knee, and by hitting her, that he was going to kill her, that he knew he was going to split that liver. That's what you got to get to. That's how you got to get to murder from here. And that's a big jump.

Trial Tr. p. 756. The jury found McDowell guilty as charged, and the trial court subsequently sentenced McDowell to sixty-five years of incarceration.

[12] On direct appeal, McDowell presented three issues: (1) whether the trial court committed fundamental error by admitting into evidence certain autopsy photographs and the videotape of the police interview with McDowell in which he stated that he had previously battered his ex-wife; (2) whether the trial court committed fundamental error when it admitted McDowell's testimony regarding his legal status at the time of the crime and the past incident of domestic violence between him and his ex-wife; and (3) whether the trial court abused its discretion when it admitted a picture of a tattoo on McDowell's back that referenced gang affiliation. *McDowell v. State*, 82A01-1311-CR-492, 2014 WL 3408336, slip op. at 1 (Ind. Ct. App. July 11, 2014). We rejected McDowell's appellate claims and affirmed his conviction. *Id.* at 3.

[13] On December 22, 2014, McDowell filed a pro se petition for post-conviction relief. On December 7, 2016, McDowell, now represented by counsel from the Indiana Public Defender's Office, filed an amended petition for post-conviction relief. The post-conviction court held an evidentiary hearing on the petition on

February 17, 2017, and entered findings of fact and conclusions of law on September 29, 2017, denying McDowell's petition. McDowell now appeals.

## Post-Conviction Standard of Review

[14] Our standard of review of claims that a post-conviction court erred in denying relief is well settled:

> Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.

> Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision.

*Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014) (citations omitted) *trans. denied*.

# Ineffective Assistance of Trial Counsel

In *Timberlake v. State,* our supreme court summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus,

if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

## I. Reckless Homicide Instruction

[16] McDowell first argues that his trial counsel was ineffective for failing to request that the jury be instructed with regard to the lesser-included offense of reckless homicide. When it comes to instructing a jury on lesser-included offenses, our supreme court explained that it has:

> developed a three-part test that trial courts should perform when called upon by a party to instruct on a lesser included offense to the crime charged. First, the trial court must compare the statute defining the crime charged with the statute defining the alleged lesser included offense to determine if the alleged lesser included offense is inherently included in the crime charged. Second, if a trial court determines that an alleged lesser included offense is not inherently included in the crime charged under step one, then it must determine if the alleged lesser included offense is factually included in the crime charged. If the alleged lesser included offense is neither inherently nor factually included in the crime charged, the trial court should not give an instruction on the alleged lesser included offense. Third, if a trial court has determined that an alleged lesser included offense is either inherently or factually included in the crime charged, "it must look at the evidence presented in the case by both parties" to determine if there is a serious evidentiary dispute about the element or elements distinguishing the greater from the lesser offense and if, in view of this dispute, a jury could conclude that the lesser offense was committed but not the greater. "[I]t is reversible error for a trial court not to give an instruction, when

> requested, on the inherently or factually included lesser offense"
> if there is such an evidentiary dispute.

*Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012) (citing and quoting *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind. 1995)).

[17] McDowell claims that his trial counsel was ineffective because he initially argued that McDowell should be convicted of involuntary manslaughter, even though that crime was not an included offense of the charged crime of murder, and that this mistake was compounded when his counsel failed to request an instruction regarding reckless homicide. This left the jury with the choice to convict McDowell of murder, the lesser-included offense of voluntary manslaughter, or acquit him. McDowell's trial counsel argued, unsuccessfully, for acquittal based on the argument that McDowell never had the intent to kill Rachel. To address McDowell's arguments, it is necessary to consider the definition of murder and its included offenses.

[18] The crime of murder is defined as knowingly[3] or intentionally[4] killing another human being. Ind. Code § 35-42-1-1(1). But a person who knowingly or intentionally kills another human being while acting under "sudden heat"[5]

---

[3] "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[4] "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." I.C. § 35-41-2-2(a).

[5] "Sudden heat occurs when a defendant is provoked by anger, rage, resentment, or terror, to a degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the

commits voluntary manslaughter. Ind. Code § 35-42-1-3(a). "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter." *Id.* at § 3(b). Thus, voluntary manslaughter is an included offense of murder. *Watts v. State*, 885 N.E.2d 1228, 1232 (Ind. 2008). Reckless homicide is defined, unsurprisingly, as recklessly[6] killing another human being. Ind. Code § 35-42-1-5. The only distinguishing feature in the elements of murder and reckless homicide is the *mens rea* required of each offense. *Evans v. State*, 727 N.E.2d 1072, 1082 (Ind. 2000). Reckless homicide is therefore an inherently included offense of murder. *Id.*

[19] McDowell claims that his trial counsel was ineffective for failing to request that the jury be instructed regarding reckless homicide. He argues that this obviously would have been a better strategy than arguing that McDowell committed involuntary manslaughter, which was foreclosed by the language of the charging information.[7] Had the jury been instructed on reckless homicide,

---

defendant incapable of cool reflection." *Conner v. State*, 829 N.E.2d 21, 24 (Ind. 2005). "Sudden heat excludes malice, and neither mere words nor anger, without more, provide sufficient provocation." *Id.*

[6] "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35-41-2-2(c).

[7] Involuntary manslaughter is committed when a person kills another human being while committing or attempting to commit (1) a Level 5 or Level 6 felony that inherently poses a risk of serious bodily injury, (2) a Class A misdemeanor that inherently poses a risk of serious bodily injury, or (3) battery. Ind. Code § 35-42-1-4(b). Involuntary manslaughter is not an inherently included lesser offense of murder. *Evans v. State*, 727 N.E.2d 1072, 1081 (Ind. 2000). However, it may be a factually included lesser offense if the charging information alleges that the killing was accomplished by means that would be a battery. *Id.*

As noted above, McDowell's trial counsel initially argued to the jury that McDowell should be convicted of involuntary manslaughter. However, this possibility was foreclosed by the language of the charging

McDowell claims, there was a reasonable probability that he would have been convicted of this lesser crime. We disagree.

[20] The nature of the injuries to Rachel's body indicate a brutal, extended beating. She was viciously beaten in the head, sufficient to cause the temporal muscle to be torn from the skull. And the injuries to the right side of her face included multiple skull fractures and were severe enough to have caused death from internal bleeding or the resulting swelling of the brain. Rachel had bruises on her intestines and a hematoma on one of her kidneys. Her ribs were not only broken, but so damaged that they literally came apart and injured her lungs. This sort of injury requires a significant amount of force. Moreover, her liver was not only lacerated, but almost severed in two.

[21] The beating inflicted on Rachel necessary to cause such injuries was so severe that no reasonable person could have found it to have been inflicted only recklessly without also having been done knowingly, i.e., "to engage in conduct with an awareness that the conduct has a high probability of resulting in death." *Lyttle v. State*, 709 N.E.2d 1, 3 (Ind. 1999) (citing Ind. Code § 35-41-2-2(b)). To beat someone as severely as Rachel was beaten goes well beyond the realm of acting recklessly, i.e., "with a plain, conscious, and unjustifiable disregard of

information, which alleged simply that McDowell "did knowingly or intentionally kill another human being, to-wit: Rachel Lomax[.]" Direct Appeal App. p. 17. Because the charging information did not allege facts that would establish a battery, involuntary manslaughter was not a factually included offense. *See Champlain v. State*, 681 N.E.2d 696, 702 (Ind. 1997) (holding that involuntary manslaughter was not a factually included lesser offense of the charged crime of murder because the charging information did not assert a battery but merely alleged that defendant knowingly killed the victim).

harm that might result and is a substantial deviation from accepted standards of conduct." *Id*. (citing I.C. § 35-41-2-2(c)).

[22] Accordingly, even if McDowell's trial counsel had requested an instruction on reckless homicide, such an instruction could not have been properly given. *See id.* at 3 (holding that trial court did not err in refusing to instruct jury on reckless homicide where defendant repeatedly hit victim with a baseball bat and therefore jury could not have found defendant guilty of recklessly killing the victim without also finding that he knowingly killed the victim); *Horan v. State*, 682 N.E.2d 502, 508 (Ind. 1997) (holding that trial court properly denied defendant's request for reckless homicide instruction where defendant repeatedly kicked and punched the victim in such a severe manner that the jury could not conclude the lesser offense of reckless homicide was committed but not the greater offense of knowing murder); *see also Dearman v. State*, 743 N.E.2d 757, 760 (Ind. 2001) (holding that trial court properly refused to instruct the jury on reckless homicide and involuntary manslaughter where evidence showed that victim died of being struck in head with large concrete block); *Jones v. State*, 948 N.E.2d 1197, 1201 (Ind. Ct. App. 2012) (holding that trial court properly refused jury instructions on reckless homicide and involuntary manslaughter where evidence showed that defendant punched victim in the chest, then placed his hands on his neck until bloody foam came out of victim's mouth), *trans. granted, opinion adopted*, 966 N.E.2d 1256 (Ind. 2012).

[23] Instructing the jury on reckless homicide would have been improper given the nature of Rachel's injuries and the severity of the beating necessary to inflict

them. And even if the reckless homicide instruction had been given, there is no reasonable possibility that the jury would have concluded that McDowell only recklessly, as opposed to knowingly, killed Rachel, given the extent of her injuries. Accordingly, McDowell's trial counsel was not ineffective for failing to request that the jury be instructed on reckless homicide.

[24] The cases cited by McDowell are distinguishable, in that the facts in those cases permitted a reasonable jury to conclude that the defendant acted recklessly but not knowingly. *See Webb v. State*, 963 N.E.2d 1103, 1108 (Ind. 2012) (holding on direct appeal that trial court erred by refusing reckless homicide instruction where there was evidence that defendant did not know whether the gun he used to shoot his girlfriend was loaded); *Fisher v. State*, 810 N.E.2d 674, 680 (Ind. 2004) (holding that post-conviction court erred in concluding that defendant was not denied ineffective assistance of appellate counsel where counsel failed to present claim that trial court erred in refusing to instruct the jury on reckless homicide where defendant admitted the shooting but claimed it was accidental and there was evidence that defendant had been "playing around" with the gun); *Brown v. State*, 770 N.E.2d 275, 281 (Ind. 2002) (holding on direct appeal that trial court erred in refusing reckless homicide instruction where erroneously excluded evidence indicated that defendant's husband's fatal act of striking child in the head with a large wooden paddle was accidental); *Garrett v. State*, 756 N.E.2d 523, 529 (Ind. Ct. App. 2001) (holding on direct appeal that trial court did not err in giving instruction on reckless homicide over defendant's objection where evidence showed that defendant was frustrated

with her two-year-old son and squeezed his neck for "too long" while playing with him, thereby crushing his larynx, and causing the child to stop breathing), *trans. denied*; *Sharkey v. State*, 672 N.E.2d 937, 941 (Ind. Ct. App. 1996) (holding that post-conviction court erred in concluding that defendant was not deprived of the ineffective assistance of counsel where counsel failed to request a jury instruction on reckless homicide where the evidence showed that defendant got into an altercation with a prostitute during which he put his hands on her neck and squeezed tightly, attempting to push her away, when she went limp and motionless), *trans. denied*.[8]

[25] We agree with the State that in each of the above cases, there was a relatively brief act that resulted in the victim's death (shooting a gun that might have been loaded, playing around with a handgun, striking a small child with a paddle, squeezing a small child's neck during play). Each of these actions could have been performed recklessly. In contrast, the evidence here shows that Rachel was subject to an extensive beating, not a momentary action, such that there is no way that McDowell could have acted merely recklessly without also acting knowingly, i.e., with an awareness that the conduct has a high probability of resulting in death.

---

[8] We further agree with the State that the two other cases McDowell cites are inapposite. In both *Lehman v. State*, 730 N.E.2d 701 (Ind. 2000), and *Wilkins v. State*, 716 N.E.2d 955 (Ind. 1999), the defendants were convicted of murder, and our supreme court simply noted that the jury in each case had been instructed on reckless homicide. *Lehman*, 730 N.E.2d at 703; *Wilkins*, 716 N.E.2d at 956. However, in neither case did the court comment on the propriety of these instructions.

In summary, the post-conviction court did not clearly err in concluding that McDowell's trial counsel was not ineffective for failing to request an instruction on reckless homicide. Although his trial counsel was mistaken with regard to the availability of the lesser-included offense of involuntary manslaughter, he did not err by failing to request an instruction on reckless homicide. The facts of this case show that the victim was so savagely beaten that there was no serious evidentiary dispute that McDowell acted recklessly without also acting knowingly. Thus, the trial court would properly have rejected such an instruction had one been requested, and there is no reasonable probability that, had such an instruction been given, the jury would have convicted McDowell of reckless homicide.

## II. Propriety of Voluntary Manslaughter Instruction

McDowell also argues that his trial counsel was ineffective for failing to object to the trial court's instructions regarding voluntary manslaughter. His argument regarding the failure to object to the jury instructions is twofold. He argues that his trial counsel should have objected to Final Instruction 5 because it misallocated the burden of proof on the element of sudden heat, and he also argues that his counsel should have objected to Final Instruction 4 because it improperly instructed the jury with regard to the lesser-included offense of voluntary manslaughter.

*A. Final Instruction 5*

[28] We first address McDowell's contention that Final Instruction 5 was "confusing and internally inconsistent" regarding the burden of proof as to sudden heat. Appellant's Br. at 39. Final Instruction 5 provided as follows:

> The included offense of Voluntary Manslaughter is defined by statute as follows: A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B Felony.
>
> The existence of sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter. *The State has the burden of proving beyond a reasonable doubt that the defendant was not acting under sudden heat.*
>
> To convict the defendant, the State must prove each of the following elements:
>
> The defendant
>
> 1. Knowingly or intentionally
>
> 2. killed
>
> 3. Rachel Lomax.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty of Voluntary Manslaughter.
>
> If the State did prove each of these elements beyond a reasonable doubt, and you further find the defendant did the killing while acting in sudden heat, you should find the defendant guilty of Voluntary Manslaughter.

Direct Appeal App. p. 144 (emphasis added).

[29] McDowell argues that, after listing the elements of murder, this instruction informs the jury that, to convict the defendant of voluntary manslaughter, it needed to find that the defendant acted in sudden heat. This, he argues, suggests that the burden is on the State to prove that the defendant was acting in sudden heat. We disagree.

[30] The complained-of portion of the instruction merely explains that the defendant can be convicted of voluntary manslaughter only if the jury finds the existence of sudden heat, which is indeed the law. *See Watts*, 885 N.E.2d at 1232. Moreover, Final Instruction 5 explicitly informs the jury that "[t]he State has the burden of proving beyond a reasonable doubt that the defendant was **not** acting under sudden heat." Direct Appeal App. p. 144 (emphasis added). Thus, the instruction did not misinform the jury that the State had to prove the existence of sudden heat, but properly instructed it that the State had to prove that the defendant did not act under sudden heat.

[31] McDowell's citation to *Eichelberger v. State*, 852 N.E.2d 631 (Ind. Ct. App. 2006), *trans. denied*, is therefore unavailing. In that case, the jury instruction incorrectly told the jury that the State had to prove the *existence of* sudden heat to obtain a conviction for voluntary manslaughter, not that the State had to prove the *absence* of sudden heat to obtain a conviction for murder. *Id.* at 639. Because Final Instruction 5 was not improper, McDowell's trial counsel did not perform deficiently by failing to object to this instruction.

*B. Final Instruction 4*

[32] McDowell also contends that his trial counsel was ineffective for failing to object to Final Instruction 4, which reads:

> *If you find that the State has failed to prove any one of the essential elements of the charged crime of Murder, you should then decide whether the State has proved beyond a reasonable doubt all elements of the included crime of Voluntary Manslaughter which has been defined for you.*
>
> If the State failed to prove each of the essential elements of the included crime beyond a reasonable doubt, the defendant should be found not guilty. If the State did prove each of the elements of the included crime beyond a reasonable doubt, you should find the defendant guilty of the lesser included crime. You must resolve reasonable doubt in favor of the accused downward from the specific crime charged through the included offense. You may not find the defendant guilty of more than one offense. Where there is a reasonable doubt existing in your minds as to which degree of an offense the defendant may be guilty of, he must be convicted of the lower degree only. If there is reasonable doubt as to all, then you must find the defendant not guilty.

Direct Appeal App. p. 143 (emphasis added).

[33] McDowell claims that this instruction is erroneous and that his trial counsel was ineffective for failing to object to it. Specifically, he claims that the first sentence misstates the law by instructing the jury to consider the lesser-included offense of voluntary manslaughter only if it first determines that the State has *not* proved all the elements of murder. As the State concedes, this is incorrect.

[34] In *Watts*, our supreme court explained that, although voluntary manslaughter is a lesser-included offense of murder, it is not a typical lesser included offense. 885 N.E.2d at 1232. A typical lesser-included offense requires proof of some, but not all, of the elements of the greater offense. *Id*. Thus, a defendant convicted of the greater offense necessarily commits the lesser. *Id*. With voluntary manslaughter, however, the existence of "sudden heat" is a mitigating factor, not an element, that the State must prove in addition to the elements of murder. *Id*. Accordingly, a conviction for murder does not mean that a defendant could also have been convicted of voluntary manslaughter, because sudden heat must be separately proved. *Id*.

[35] Accordingly, for the jury to convict McDowell of voluntary manslaughter, it would have had to first conclude that the State *did* prove the elements of murder, then consider whether the Sate negated the existence of sudden heat.[9] Final Instruction 4, however, informs the jury that it should decide whether McDowell committed the lesser-included offense if it finds that the State failed to prove one of the elements of murder. As explained in *Watts*, although this is true of most lesser-included offenses, it is not true of voluntary manslaughter. With voluntary manslaughter, the failure to prove one of the essential elements

---

[9] "Although the State has the burden of negating the existence of sudden heat beyond a reasonable doubt, in order to inject that issue at all the defendant must point to some evidence supporting sudden heat whether this evidence be in the State's case or the defendant's own." *Jackson v. State*, 709 N.E.2d 326, 328 (Ind. 1999).

of the greater offense of murder is also the failure to prove one of the essential elements of the lesser offense of voluntary manslaughter. *See id.*

[36] McDowell claims that his counsel was ineffective for failing to object to Final Instruction 4 on these grounds, citing *McWhorter v. State*, 970 N.E.2d 770 (Ind. Ct. App. 2012), *trans. granted, summarily aff'd in relevant part*, 993 N.E.2d 1141 (Ind. 2013).[10] In *McWhorter*, the defendant claimed that his trial counsel was ineffective for failing to object to the trial court's instruction on voluntary manslaughter, which informed the jury that if the State failed to prove the elements of murder, it must find the defendant not guilty of murder. *Id.* at 777. Immediately after this, however, it stated, "[y]ou may *then* consider any included crime," and set forth the elements of voluntary manslaughter. *Id.* (emphasis added).

[37] The *McWhorter* court held that the instruction improperly directed the jury to consider the lesser included offense of voluntary manslaughter only if the State failed to prove all the elements of murder. *Id.* Thus, the jury was effectively instructed to "find that McWhorter did not knowingly or intentionally kill [the victim], but that he did knowingly or intentionally kill [the victim] while acting in sudden heat." *Id.* We held that trial counsel's failure to object to this

---

[10] In this court's opinion in *McWhorter*, we also held that the defendant could be retried on a charge of reckless homicide but not voluntary manslaughter. 970 N.E.2d at 778. The State sought transfer, challenging only this aspect of our opinion. Our supreme court granted transfer and concluded that the defendant could be retried on charges of both reckless homicide and voluntary manslaughter. *McWhorter*, 993 N.E.2d at 1144–45. The court summarily affirmed our conclusion that the defendant's trial counsel rendered ineffective assistance. *Id.* at 1145 n.3.

improper instruction was deficient performance. *Id*. We further held that the defendant was prejudiced by this deficiency because the jury was advised that the defendant could be convicted of voluntary manslaughter if less than all the elements of murder were proven. *Id*. at 778. We therefore concluded that the defendant was prejudiced because he was convicted of voluntary manslaughter, which, according to the jury instructions, could only be proved on a failure to find all the elements of murder, yet a conviction for voluntary manslaughter requires proof of all the elements of murder.[11] *Id*.

[38] Here, it is undisputed that Final Instruction 4 was improperly worded. But it is well-settled that jury instructions are to be considered as a whole, not in isolation. *O'Connell v. State*, 970 N.E.2d 168, 172 (Ind. Ct. App. 2012). To constitute an abuse of discretion, the instructions taken as a whole must misstate the law or otherwise mislead the jury." *Id*. And the jury here was instructed to consider the instructions as a whole. Direct Appeal App. p. 140.

---

[11] We also held that "McWhorter was prejudiced in that he ultimately stood convicted of Voluntary Manslaughter, an offense not initially charged by the State and one upon which McWhorter did not proffer evidence or request instruction." *Id*. Upon further reflection, we do not think that this is a proper consideration in determining whether the defendant was prejudiced, as it is irrelevant that the defendant did not request the lesser-included offense instruction. It has long been held that, even if a defendant is charged with a greater offense, the State may request that the jury be instructed on a lesser-included offense so long as there is evidence to support the lesser offense. *See Garrett*, 756 N.E.2d at 529–30 (holding that, even though State charged defendant only with murder, it was proper to instruct the jury on the lesser included offense of reckless homicide, over defendant's objection, where there was some evidence to support the lesser-included-offense instruction); *cf. Watts*, 885 N.E.2d at 1230 (holding that it was error to give, over defendant's objection, State's requested instruction on lesser-included offense of voluntary manslaughter where there was no evidence to support the lesser-included-offense instruction).

[39]   Here, Final Instruction 5 properly set forth the law regarding voluntary manslaughter. That is, Final Instruction 5 informed the jury: that voluntary manslaughter is defined as knowingly or intentionally killing another human being while acting under sudden heat; that the existence of sudden heat is a mitigating factor that reduces what would otherwise be murder to voluntary manslaughter; and that the State had the burden of proving that McDowell was not acting under sudden heat. Final Instruction 5 then provided:

> To convict the defendant, the State must prove each of the following elements:
>
> The defendant
>
> 1. Knowingly or intentionally
>
> 2. killed
>
> 3. Rachel Lomax.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty of Voluntary Manslaughter.
>
> If the State did prove each of these elements beyond a reasonable doubt, and you further find the defendant did the killing while acting in sudden heat, you should find the defendant guilty of Voluntary Manslaughter.

*Id*. at 144.

[40] Thus, unlike in *McWhorter*,[12] here the jury was properly instructed that if the State failed to prove that McDowell knowingly or intentionally killed Rachel, it was to find him not guilty of voluntary manslaughter, but that if the State did prove that he knowingly or intentionally killed Rachel while acting in sudden heat (which the State had the burden to disprove), it should find him guilty of voluntary manslaughter. Viewing the instructions as a whole, we do not think that the jury was misinformed of the law regarding voluntary manslaughter. The post-conviction court therefore did not clearly err in rejecting McDowell's claim of ineffective assistance of counsel for failing to object to these jury instructions.

## Conclusion

[41] The post-conviction court did not clearly err in concluding that McDowell was not denied the effective assistance of trial counsel. The evidence shows that McDowell brutally beat the victim in such a manner that he could not have simply been acting recklessly. Thus, even if his trial counsel had requested an instruction on reckless homicide, it could not have been properly given, and if

---

[12] McDowell also cites *Roberson v. State*, 982 N.E.2d 452 (Ind. Ct. App. 2013), which we also find to be distinguishable. In that case, the jury was instructed that, if the State proved the defendant guilty of murder, it "need not" consider the included crimes of voluntary manslaughter, involuntary manslaughter, and reckless homicide. *Id*. at 457. And when reading the instruction, the trial court worsened this error by telling the jury that it "must not" consider the included crimes if it found the defendant guilty of murder. *Id*. at 458. Here, the jury was informed of the opposite in Final Instruction 4, i.e., that it should consider the lesser included offense if it found that the State failed to prove the greater offense of murder. Moreover, the instruction in *Roberson*, further misinformed the jury that the State had the burden of proving sudden heat, and no instruction properly informed the jury that the State had the burden of *disproving* sudden heat. *Id*. at 460–61. Here, the jury was properly informed as to the burden of proof, and the improper wording of Final Instruction 4 was cured by the correct statement of law contained in Final Instruction 5.

such an instruction had been given, there is no reasonable probability that the jury would have convicted him of reckless homicide while acquitting him of murder. Furthermore, the jury instructions properly set forth the elements of the included offense of voluntary manslaughter, and the error in Final Instruction 4 was cured by the proper statement of law contained in Final Instruction 5. Accordingly, we affirm the judgment of the post-conviction court.

[42] Affirmed.

Riley, J. and May, J. concur.