## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 21 2020, 7:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Fredrick L. Edmond
Pendleton, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal
Appeals

Henry Flores
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Fredrick L. Edmond,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | January 21, 2020<br><br>Court of Appeals Case No.<br>18A-PC-2738<br><br>Appeal from the Lake Superior<br>Court<br><br>The Honorable Salvador Vasquez,<br>Judge<br><br>The Honorable Kathleen A.<br>Sullivan, Magistrate<br><br>Trial Court Cause No.<br>45G01-1105-PC-4 |

**Mathias, Judge.**

[1] Fredrick Edmond ("Edmond") was convicted of voluntary manslaughter and attempted murder in 2006. Following his unsuccessful direct appeal, Edmond filed a petition for post-conviction relief, which the Lake Superior Court denied. Edmond appeals pro se and challenges whether the post-conviction court clearly erred in determining that Edmond received effective assistance of trial and appellate counsel.

[2] We affirm.

## Facts and Procedural History

[3] The facts underlying Edmond's convictions are as follows.

> . . . Cher Steward and Edmond were in a relationship and lived together after their twin children were born. They separated and an arrangement was reached whereby [Edmond's mother] had custody of the children.
>
> Cher spent the night [before Edmond's crime] at the home of Alexis Hamilton as did Shawnquella Williams. The next day [June 19, 2005], the three women left the house. Cher was driving Alexis'[s] mother's car, with Alexis in the front passenger seat, and Shawnquella sitting behind Alexis.
>
> . . . After driving around, they spotted Edmond's car. Cher stopped and walked to the driver's side window and she and Edmond talked of [their] children. There was a restraining order in effect which limited Cher's contact with Edmond. Also in Edmond's car was a woman named Ashley who was sitting next to Edmond. As Cher and Edmond talked, Ashley leaned over and rolled up the car window. Edmond rolled the window back down. Ashley made a comment about taking care of Cher's

children. Cher made a verbal attack of Ashley, who in turn got out of the car, and a physical altercation occurred between the two. After two or three minutes, Alexis and Shawnquella broke up the fight and convinced Cher to return to their car. As they left, Cher threw a glass orange juice bottle, hitting Edmond's car hood.

Cher drove to her house and was claiming to "bust out" Edmond's windows. She went into the house, returned with a hammer, and then headed back to Edmond's house. Cher, Alexis, and Shawnquella remained in the car in the positions previously described.

Cher pulled up next to Edmond's now unoccupied vehicle. Cher got out and tried to break a front passenger window [but] failed. She did succeed in breaking out a rear passenger side window before hurrying back to [the] car. As [the women] prepared to leave, one of the women cried out that Edmond was standing at the right front of the car and pointing a .45 caliber pistol at them. Four to seven shots were fired by Edmond in rapid succession as Cher sped away.

. . . Alexis had been shot three times, with the fatal shot entering her back, perforating her right lung, tearing her ascending aorta, and exiting through her left breast. The bullet and casings were from a .45 caliber pistol and were fired from the same weapon. Except for the hammer, there were no deadly weapons in [the] car.

During the trial, Shawnquella testified that she had told Cher, after the shooting started, to run over Edmond with the car. Other evidence showed that Edmond was never in front of the car. Edmond rested without putting on witnesses or introducing evidence.

*Edmond v. State*, No. 45A03-0610-CR-487, 2007 WL 1651238 at \*1–2 (Ind. Ct. App. June 8, 2007).

[4]     On June 21, 2005, the State charged Edmond with one count of murder, two counts of attempted murder, and two counts of attempted battery with a deadly weapon. A jury trial was held in July 2006, at the conclusion of which the State requested the jury be instructed on voluntary manslaughter. The trial court accepted the instruction over Edmond's objection. The jury found Edmond guilty of Class A felony voluntary manslaughter, Class A felony attempted murder, and Class C felony attempted battery. A sentencing hearing was held the next month. Edmond was sentenced to forty years for voluntary manslaughter and forty years for attempted murder, to be served consecutively. In addition, Edmond's sentence was enhanced by thirty years due to his status as an habitual offender, for a total term of imprisonment of 110 years. No judgment was entered and Edmond was not sentenced for attempted battery.

[5]     On direct appeal to this court, Edmond—represented by counsel—challenged whether the evidence presented at trial was sufficient to rebut his defense of self-defense and support his conviction for voluntary manslaughter, as well as the appropriateness of his sentence. We affirmed the trial court's judgment, and our supreme court denied transfer.

[6]     On September 24, 2015, Edmond filed a petition for post-conviction relief, stating as grounds for relief that he had received ineffective assistance of trial and appellate counsel in violation of the Sixth and Fourteenth Amendments to

the United States Constitution. Specifically, he argued that trial counsel was ineffective for failing to ensure that the jury was properly instructed regarding sudden heat and voluntary manslaughter, and that appellate counsel was ineffective for failing to raise the erroneous jury instruction and trial counsel's ineffectiveness on appeal. The post-conviction court held a hearing on the petition on February 28, 2018, and subsequently issued findings of fact and conclusions of law denying relief. This appeal followed.

## Post-Conviction Standard of Review

[7] Our standard of review for claims of post-conviction court error is well settled:

> A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court.
>
> Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision.

*Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014) (citations omitted)

*trans. denied*.

## Effective Assistance of Trial Counsel

Edmond first asserts that the post-conviction court erred when it found that he was not denied the effective assistance of trial counsel. The Sixth Amendment guarantees criminal defendants the right to counsel and mandates that "the right to counsel is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In *Timberlake v. State*, our supreme court summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland*[]. First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted).

[9] Edmond argues that his trial counsel provided ineffective assistance because trial counsel allowed an erroneous instruction for voluntary manslaughter to be tendered to the jury. Appellant's Br. at 7. "There is a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Weisheit v. State*, 109 N.E.3d 978, 983 (Ind. 2018). An isolated mistake or instance of bad judgment "do not necessarily render representation ineffective." *Id.* at 984. Our review of the record reveals that, at the conclusion of Edmond's trial during which counsel had presented a self-defense strategy, the State requested the jury be instructed on the "lesser instruction for murder which is voluntary manslaughter."[1] Trial Tr. Vol. II, p. 371.

> [State]: . . . I believe that a jury based upon the evidence that they've heard to this point can reasonably return a verdict within the facts of the case as presented at trial that this defendant killed – killed the victim who died in this case under sudden heat. . . .

> [Edmond]: Your Honor, I would object. . . There is no evidence in the record that Mr. Edmond was acting under sudden heat or in an excited manner. To the contrary, the testimony was that in

---

[1] The difference between murder and voluntary manslaughter under Indiana law is the presence in the latter of sudden heat, which is defined as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary man; [sudden heat] prevents deliberation and premeditation, excludes malice, and renders a person incapable of cool reflection." *Sanders v. Cotton*, 398 F.3d 572, 576 (7th Cir. 2005) (quoting *McBroom v. State*, 530 N.E.2d 725, 728 (Ind. 1988)). The post-conviction court noted that, although it is a lesser included offense of murder, it is not a "typical" lesser included offense, because to secure a conviction for voluntary manslaughter, the State must prove the elements of murder *and* there must be evidence of sudden heat. *See Watts v. State*, 885 N.E.2d 1228, 1233 (Ind. 2008) (holding that it is reversible error to instruct a jury on voluntary manslaughter in addition to murder in the absence of a serious evidentiary dispute over sudden heat).

all respects, Mr. Edmond appeared to be calm. . . . [W]hatever his reasons were for firing that gun and obviously we'll take the position that it was done in self-defense, in any event, if it wasn't self-defense, then it certainly was a premeditated murder. There was a long history of bad blood between Mr. Edmond and Cher Steward, and if it was not a self-defense, then it was a calculated premeditated plan which would not entitle him to a voluntary manslaughter instruction.

[State]: . . . I believe that based upon the evidence that the jury could reasonably assume that [Edmond] was mad and upset about Cher Steward breaking out his windows and thus opened up fire. . .

[The Court]: Clearly the evidence is absent of any direct statement of the defendant's rage. . . . On the other hand, the evidence does show that just prior to the shooting occurring, we have a person, Cher Steward, who did break out the defendant's car windows. I guess the question would be is that sufficient to suggest to a jury as they consider a verdict that there may be circumstantial evidence as to rage. . . as to sudden resentment, anger, rage, a strong emotion that would lead Mr. Edmond to do what he did, notwithstanding the potential of self-defense? . . . The fact that the defendant through [counsel] did not request [the voluntary manslaughter instruction], should I be precluded [from] granting it to the [S]tate if they requested it? Well, I think the answer should be no. . . . I think factually, there may be circumstantial evidence of that rage that may produce the sudden heat necessary for the voluntary. The facts in this case support a request for voluntary, and I will grant it. The objection will be noted[.]

Trial Tr. Vol II, pp. 371–75.

[10] Subsequently, the jury was instructed on both murder and voluntary manslaughter over Edmond's objection to the latter. Our supreme court has previously explained how this dual instruction *in the absence of sudden heat* can prejudice a defendant:

> One legitimate trial strategy for the defendant in a murder trial is an "all-or-nothing" one in which the defendant seeks acquittal while realizing that the jury might instead convict of murder. In a situation where a jury must choose between a murder conviction and an acquittal, the defendant might well be acquitted. But if the jury has voluntary manslaughter as an intermediate option, the defendant might be convicted of voluntary manslaughter as a "compromise." Such a verdict is not appropriate if unsupported by any evidence of sudden heat; moreover, an unsupported voluntary manslaughter instruction deprives the defendant of the opportunity to pursue a legitimate trial strategy.

*Watts v. State*, 885 N.E.2d 1228, 1233 (Ind. 2008).

[11] Therefore, in cases like Edmond's where the State requests instructions on both murder and voluntary manslaughter, evidence of the distinguishing feature between the offenses—sudden heat—must have been introduced to the jury and be in dispute. Only where there is no serious evidentiary dispute regarding sudden heat may defense counsel's objection to voluntary manslaughter be sustained. *Id.*

[12] Here, the trial court in its sound discretion determined that a voluntary manslaughter instruction was appropriate, and instructed the jury, in relevant part, as follows:

The Defendant is charged with Murder in Count I. Voluntary Manslaughter, Class A felony, is included in Count I, Murder. If the State proves the Defendant guilty of murder, you need not consider the included crime. However, if the State fails to prove the Defendant committed Murder, you may consider whether the Defendant committed Voluntary Manslaughter, class A Felony, which the court will define for you. You must not find the Defendant guilty of more than one crime for each count.

(a) "A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter. The offense is a Class A felony if it is committed by means of a deadly weapon."

(b) "The existence of sudden heat is a mitigating fact that reduces what otherwise would be Murder to Voluntary Manslaughter."

Before you may convict the defendant as charged, the State must have proved each of the following elements:

1. The defendant

2. Knowingly or intentionally

3. Killed

4. Alexis Hamilton

5. By means of a handgun, a deadly weapon, and;

6. That the defendant did the killing while acting under sudden heat.

> If the state failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Voluntary Manslaughter, a Class A Felony.

Appellant's App. Vol. III, pp. 21–22.

[13] In line with trial counsel's all-or-nothing self-defense strategy, trial counsel objected to this instruction; however, after reviewing the instructions, trial counsel "indicated that he believed the instruction to be an appropriate instruction on voluntary manslaughter." Appellant's App. Vol. III, p. 25; *see* Trial Tr. Vol. II, p. 375. And, we know, the jury went on to determine that the State had proven all elements of the offense beyond a reasonable doubt, resulting in Edmond's conviction for voluntary manslaughter and the failure of Edmond's self-defense strategy aimed toward securing his acquittal for murder.

[14] The post-conviction court identified two errors in this voluntary manslaughter instruction. The first error was the "problematic language" of the instruction, which directed the jury to consider it as an "included" crime, in the event the State failed to prove murder. Appellant's App. Vol. III, pp. 25–26. This is despite the fact that the first four elements of the voluntary manslaughter instruction *themselves* constituted the four elements necessary to prove murder. *See id.* at 21. This was error, in the post-conviction court's words, because "[a]fter finding that the State had *failed* to prove the elements of Murder, the jury went on to find that the State *had proven* the elements of murder, plus sudden heat." Appellant's App. Vol. III, p. 26 (emphasis added). Despite this error, the post-conviction court determined that the jury was properly

instructed, because sudden heat was correctly described as being a mitigating factor that reduces what would be murder to voluntary manslaughter. *Id.*, *citing McDowell v. State*, 102 N.E.3d 924, 937 (Ind. Ct. App. 2018) (addressing the same erroneous voluntary manslaughter language and determining a jury was not misinformed regardless of the error, and also that counsel was not ineffective for failing to object to such an instruction), *trans. denied*.

[15]	The post-conviction court identified the second error in the voluntary manslaughter instruction as sudden heat being characterized as an element of the offense, which it is not:

> 17.  . . . When looking at the statutory language for the [voluntary manslaughter] offense, sudden heat is not listed as an element. Of course, when the defense requests an instruction for Voluntary Manslaughter as a lesser-included offense of Murder, then necessarily the State would bear the burden of disproving sudden heat in order to secure a conviction of Murder. However, this logic seems to fail when the *State* seeks to convict a defendant of Voluntary Manslaughter [as is the case here]— either as a lesser-included offense, or as a stand-alone offense. One would think under that scenario that due process would require the State to prove sudden heat as an element. But this is not the law.
>
> 18.  . . . [In 2018, t]he [Indiana] Supreme Court reiterated that sudden heat is not an element of Voluntary Manslaughter, but instead a mitigating factor. . . .[T]he State must prove the elements of murder and there must be *some evidence* of the sudden-heat mitigating factor for a defendant to be found guilty of voluntary manslaughter.

Appellant's App. Vol. III, pp. 26–27, *citing In re Winship*, 397 U.S. 358 (1970); *Brantley v. State*, 91 N.E.3d 566, 572 (Ind. 2018) (internal citations omitted, emphases original to post-conviction court's order).

[16] The post-conviction court reasoned that, although the voluntary manslaughter instruction erroneously and imprecisely included sudden heat as an *element* of the offense, the error was harmless because it held the State to a higher burden of proof; that is to say, as written, the jury was instructed to find Edmond not guilty of voluntary manslaughter *unless* the State proved the "element" of sudden heat beyond a reasonable doubt, which is more than is required by law. Appellant's App. Vol. III, p. 27, *citing Brantley*, 91 N.E.3d 566. All that is required, as noted above, is that a serious evidentiary dispute regarding the presence of sudden heat is before the jury.

[17] The post-conviction court ultimately found that the objection to the voluntary manslaughter instruction lodged by Edmond's counsel was unlikely to have been sustained because the specific wording of sudden heat as an "element" of the offense was standard at the time.[2] Furthermore, the post-conviction court found that Edmond was not prejudiced because, even though the voluntary manslaughter instruction contained errors, it held the State to a higher-than-

---

[2] At the time of Edmond's trial in 2007, some pattern jury instructions for voluntary manslaughter apparently still referred to sudden heat as an element, despite definitive statements to the contrary by our supreme court, including this from *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002): "It is well settled in Indiana that sudden heat is not an element of voluntary manslaughter."

required standard of proof and was part of a series of instructions that, as a whole, properly instructed the jury:

> 16. . . . Voluntary Manslaughter was correctly defined in the instruction, and included the language that sudden heat was a mitigating factor, and that if the State failed to prove each of the elements of Voluntary Manslaughter, they should find the defendant not guilty. The only significant distinction between the instructions in [another case with problematic voluntary manslaughter instructions] and the instructions in this case is that [the other case's] instruction informed the jury that the State bore the burden of disproving sudden heat [in order to prove murder]. In this case at bar, the jury was instructed that sudden heat was an element of Voluntary Manslaughter that *had to be proven* by [the] State.

Appellant's App. Vol. III, p. 26, *citing McDowell*, 102 N.E.3d 924 (emphasis added).

[18]    Based on these findings, the post-conviction court concluded that Edmond had failed to prove either prong of the *Strickland* test, and therefore had not been denied effective assistance of trial counsel. Because the post-conviction court's conclusion that Edmond was not denied effective assistance of trial counsel is supported by sufficient evidence, we affirm the post-conviction court's judgment on this issue.

## Effective Assistance of Appellate Counsel

[19]    Edmond's second assertion is that the post-conviction court erred when it found that he was not denied the effective assistance of appellate counsel. Edmond argued that his appellate counsel rendered deficient representation on appeal for

(1) failing to raise the errors in the voluntary manslaughter jury instruction, and (2) failing to raise the issue of trial counsel effectiveness. Appellant's Br. at 7. Our standard of review for post-conviction claims of ineffective assistance of appellate counsel is the same as our review of trial counsel effectiveness. *Ward v. State*, 969 N.E.2d 46, 75 (Ind. 2012). The post-conviction petitioner must demonstrate that appellate counsel's performance fell below an objective standard of reasonableness, and that there was a reasonable possibility that, but for the deficient performance of appellate counsel, the result of the appellate proceeding would have been different. *Harris v. State*, 861 N.E.2d 1182, 1186–87 (Ind. 2007).

[20] The three categories of ineffective assistance of appellate counsel claims are: "(1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well." *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006). Edmond's claims fall into the second category, waiver of issues, and thus we evaluate whether the unraised issues—appellate counsel's failure to raise instructional error and trial counsel's effectiveness—are significant and obvious from the face of the trial court record and whether the unraised issues are "clearly stronger" than the issues that were raised. *See id*. We note that failure by appellate counsel to raise an issue on direct appeal rarely constitutes ineffective assistance, because the decision about which issues to raise on appeal is one of the most important strategic decisions made by appellate counsel, and great deference is afforded to appellate counsel's strategic decision-making. *See Taylor v. State*, 717 N.E.2d 90, 94 (Ind. 1999).

[21] The sole issue raised by appellate counsel was whether the evidence was sufficient to support Edmond's convictions for voluntary manslaughter and attempted murder, thereby rebutting Edmond's self-defense claim. *Edmond v. State*, No. 45A03-0610-CR-487, 2007 WL 1651238 at *1 (Ind. Ct. App. June 8, 2007). To demonstrate that he received ineffective assistance of appellate counsel, Edmond was required to show that appellate counsel's decision to challenge the sufficiency of the evidence could not be explained by any reasonable strategy.

[22] The post-conviction court determined that Edmond had not met his burden concerning ineffective assistance of appellate counsel for much the same reason that it found Edmond had not demonstrated that he received ineffective assistance of trial counsel. It was "clearly a strategic decision" by trial counsel to not request the voluntary manslaughter instruction, and trial counsel duly objected to the instruction because it eroded the success of Edmond's self-defense defense at trial. Appellant's App. Vol. III, p. 27.

[23] Although the instruction contained errors, as explained *supra*, as a whole, the jury was not misled as to a correct statement of the voluntary manslaughter law. Thus, it was reasonable for appellate counsel to decline to raise the erroneous instruction and trial counsel's effectiveness in relation to the erroneous instruction. Neither issue was a part of appellate counsel's reasonable strategy: to contest whether the evidence sufficiently rebutted Edmond's self-defense

claim on appeal.[3] In addition, as explained *supra*, the erroneous instruction was standard at the time and did not diminish the correctness of the instructions as a whole, and trial counsel pursued a reasonable, all-or-nothing self-defense strategy at trial. Finally, it cannot be said that but for appellate counsel's strategy, Edmond's convictions would have been overturned based on the strength of the issues that appellate counsel declined to raise on appeal.

## Conclusion

[24] For all of these reasons, we affirm the post-conviction court's denial of Edmond's petition for post-conviction relief.

[25] Affirmed.

May, J., and Brown, J., concur.

---

[3] Additionally, we note that post-conviction proceedings are the preferred forum for adjudicating claims of ineffective assistance of trial counsel, as opposed to adjudicating such claims on direct appeal. This is preferred because ineffective assistance of counsel claims typically require the development of new facts not present in the trial record. *McIntire v. State*, 717 N.E.2d 96 (Ind. 1999). To the extent Edmond's appellate counsel based his strategy on this guidance, declining to raise ineffective assistance of trial counsel as part of Edmond's direct appeal was eminently reasonable.